Peter CASELLA, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civ. No. 61–69.

United States District Court
D. New Jersey.

Oct. 8, 1969.

Peter Casella, pro se.

David M. Satz, Jr., U. S. Atty., Newark, N. J., by Robert W. Page, Asst. U. S. Atty., Camden, N. J., for respondent.

## MEMORANDUM AND ORDER

COHEN, District Judge:

Petitioner moves, pursuant to 28 U.S.C. § 2255, for an order vacating the judgment of conviction and the sentence of 25 years imprisonment imposed upon him in 1959. He alleges that the charge of the trial judge [1] deprived him of his right to a fair trial guaranteed by Article III of the United States Constitution and by the Fifth, Sixth and Fourteenth Amendments thereto, hence warranting his retrial or discharge from federal custody.

Casella, together with a codefendant, James Santore, was convicted by a jury on Indictment No. 151–58 containing four counts which, in pertinent part, charged that on January 23, 1958, in Gloucester County, New Jersey, the defendants sold heroin and opium in violation of the provisions of the Federal Narcotic Laws, 21 U.S.C. § 174 [2] and the Marihuana Tax Act, 26 U.S.C. §§ 4704(a) and 4705(a) [3].

The Government's proof was based largely upon the testimony of two federal narcotic agents, Marshall and Picini, to the effect that prior to the date of the offense mentioned in the indictment they had several meetings with Santore in Philadelphia seeking from him a source for the purchase of narcotic drugs. Eventually, Casella was introduced to these agents by Santore as his New York connection and as the person who could arrange for the purchase of large quantities of opium and heroin. The agents testified that thereafter they purchased narcotics from Casella and Santore in October, 1957, at a New Jersey Motel;

---

1. Since the trial and sentence of the petitioner in 1959, the presiding judge retired. Authority for this Court to dispose of the instant application is provided in Rule 25(b) F.R.Crim.P.

2. 21 U.S.C. § 174:
"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States * * * contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States * * * or conspires to commit any of such acts in violation of the laws of the United States shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. * * *."
"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

3. 26 U.S.C. § 4704(a):
"It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."
26 U.S.C. § 4705(a):
"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

that they did likewise in December, 1957 in New York City (these alleged sales are not charged in the indictment) ;[4] that in January, 1958 they met several times with Casella and Santore at a restaurant in the vicinity of Atlantic City, New Jersey, where they again discussed the purchase of large quantities of opium and heroin (200 cans of opium for $100,000 and 5 kilos of heroin for $50,000) ; that on January 23, 1958 Santore alone, Casella not being present, made the sale in question to agent Marshall at the King Cole Motel near Atlantic City, New Jersey; and that they had not seen or spoken to Casella for a week prior to the date of the purchase in question from Santore.

Santore testified in his own defense, denying involvement other than as procured by the agents in regard to which he asserted a defense of entrapment and exonerating Casella. Casella did not testify, nor did he offer any evidence in his behalf. The jury found both guilty as charged and, on January 5, 1959, petitioner Casella was sentenced to a total of 25 years imprisonment, which term was to run concurrently with a 40-year sentence of imprisonment imposed upon him in the United States District Court, Southern District of New York. See: United States v. Santore and Casella et al., 290 F.2d 51 (2 Cir. 1960), rehearing *en banc* at p. 74, cert. den. D'Aria v. United States, 365 U.S. 834, 835, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961). The convictions here in question were affirmed upon appeal. United States v. Santore and Casella, 270 F.2d 503 and 949 (3 Cir. 1959), cert. den. Casella v. United States, 361 U.S. 930, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960).

On the present motion, as we view his position, Casella contends that he was denied a fair trial because the Court's instructions to the jury were fatally defective, in the Constitutional sense, in

that guilty knowledge of illegal importation of narcotic drugs [5] on his part was mandated by the trial court. Such mandate completely removed from the jury's consideration an appraisal of Santore's testimony wherein he denied any participation by Casella in, or knowledge of, the transaction charged in the indictment, or in any other transaction mentioned in the case. It does not appear that this precise issue was presented to the Court of Appeals. However, in any event, the development of the law, since the affirmance of the petitioner's conviction, gives rise to a paramount issue regarding the constitutionality of the criminal statutory presumption of guilty knowledge of the importation of narcotic drugs.

Although a motion under 28 U.S.C. § 2255 is no substitute for appeal, Nash v. United States, 342 F.2d 366, 367 (5 Cir. 1965), Eisner v. United States, 351 F.2d 55 (6 Cir. 1965) cited with approval in Kaufman v. United States, 394 U.S. 217, 220, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), it does embrace the attributes of the ancient writ of *coram nobis*, as a collateral avenue of review, and the guidelines dealing with its availability are much the same as those governing the grant of a writ of *habeas corpus*. *Kaufman*, supra, at pages 221–223, 89 S.Ct. 1068. It is claims in collateral post-conviction proceedings, such as asserted here, which impugn the integrity of the fact-finding process, or which are of constitutional dimension, that warrant judicial scrutiny anew. See: United States v. Hayman, 342 U.S. 205, 219, 72 S.Ct. 263, 96 L.Ed. 232 (1952) ; Hill v. United States, 368 U.S. 424, 427, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) ; Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed. 2d 148 (1963) ; and *Kaufman*, supra. As stated in *Kaufman*, supra, at page 228, 89 S.Ct., at p. 1075: "The right then is not merely to a federal forum but to full

---

4. This testimony of other sales, antedating the sale charged in the indictment, was not offered in the Government's case in chief. Rather, it was introduced over the objection of counsel in rebuttal of San-

tore's defense of entrapment as well as of his exoneration of Casella.

5. See footnote 2 ante.

and fair consideration of constitutional claims."

Turning to those portions of the Court's charge complained of, the trial judge, after reference to the four counts [6] in the Indictment and to the pertinent provisions of the Statutes, instructed the jury as follows:

*"There has been considerable comment, ladies and gentlemen, made that there is no showing that the defendant, Casella, ever had possession of the narcotics in question or that they were imported into the United States.* I will now read to you Section 2 of Title 18: 'Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission is a principal * * *.'

" * * * so, if you find that the defendant, Santore, had possession of the narcotics in question, *and you further find that the defendant, Casella, had knowledge of Santore's conduct, and that Casella aided and abetted Santore in carrying on such enterprise, then he, Casella, would be legally held to have possession of the narcotics the same as Santore.* This, then, if you so find, would bring into full force and effect that portion of the statute that I have previously read to you: 'Whenever on trial for a violation of this subsection, the defendant is shown to have or have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.'

"So, ladies and gentlemen, if you find that the defendants had possession of the drug, you will then consider whether the defendant or defendants have explained their possession to your satisfaction, as required under the statute, *and not concern yourself with the question of importation of the drug into the United States, unless such importation would play some part in the explanation made by the defendants."*

(Emphasis supplied; Trial Transcript, pp. 376–377.)

At the time of this trial in 1959, it would appear that the statutory presumption of guilty knowledge of importation from unexplained possession of narcotic drugs, was, as determined in Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925), not to be in violation of the self-incrimination clause of the Fifth Amendment to the Constitution. Then followed, among others, the case of Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), which involved the constitutionality of a statute declaring that possession of a firearm or ammunition by a person convicted of a crime, or by a fugitive from justice, raised a presumption that such was shipped, transported or received from interstate commerce, in violation of the *Federal Firearms Act.* The Court, applying the test used in a civil case [7], determined that the statutory presumption was unconstitutional holding " * * * that there [must] be some rational connection between the fact proved and the ultimate fact presumed." No such logical nexus was found to exist.[8]

Since the conviction in the present case, the constitutionality of criminal statutory presumptions has been reviewed by the Supreme Court of the United States in three outstanding cases: United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965) and Leary v. United

6. Counts I and II, that defendants knowingly bought, concealed and sold opium and heroin which had been unlawfully brought into the United States, and Counts III and IV, that they sold the same without a written order and not from the original stamped package.

7. Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910).

8. Cf: Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

**760**

States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed. 2d 57 (1969). In *Gainey*, the presumption was that proof of a defendant's mere *presence* at an illegal still permitted an inference that he was carrying on the business of a distiller. This presumption, under the authority of *Tot*, was sustained on the theory of a rational connection between the facts proved and those presumed. In *Romano*, a presumption similar to that contained in *Gainey* was considered but with the added factor that the jury could infer possession, custody or control of an illegal still from mere presence. This presumption was held to be constitutionally invalid as being "too tenuous to permit a reasonable inference of guilt." As stated by the Court, at page 141 of 382 U.S., at page 282 of 86 S.Ct.: "All of the cases which deal with this issue and with which we are familiar have held presence alone, unilluminated by other facts, to be insufficient proof of possession." (citing cases.)

In the recent case of Leary v. United States, supra, similar statutes as in the present case, with identical criminal statutory presumptions, confronted the Court. Briefly, Leary was charged with smuggling marihuana into this country, in violation of 21 U.S.C. § 176a, in that he knowingly transported and concealed the same with knowledge of its illegal importation and further, that as a transferee of such he failed to pay taxes in obvious violation of the Marihuana Tax Act, 26 U.S.C. §§ 4741 and 4744(a) (2). As stated by the Court 395 U.S. at page 12, 89 S.Ct., at p. 1535:

"We granted certiorari * * * to consider two questions: (1) whether petitioner's conviction for failing to comply with the transfer tax provisions of the Marihuana Tax Act violated his Fifth Amendment privilege against self-incrimination; (2) whether petitioner was denied due process by the application of the part of 21 U.S.C. § 176a which provides that a defendant's possession of marihuana shall be deemed sufficient evidence that the marihuana was illegally imported or brought into the United States, and that the defendant knew of the illegal importation or bringing in, unless the defendant explains his possession to the satisfaction of the jury."

The Court thereupon, in disposition of these two questions, ruled in favor of Leary on both issues, reversed his conviction and noted at page 36, 89 S.Ct., at p. 1548:

"The upshot of *Tot*, *Gainey* and *Romano* is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."

In the instant case, the essential element of guilty knowledge of illegal importation of narcotic drugs was predicated upon "possession," which in turn depended upon a finding of aiding and abetting one who did in fact have possession. The Court instructed the jury that if it found that Santore, on January 23, 1958, had possession and if it further found "that the defendant Casella had knowledge of Santore's conduct, and that Casella aided and abetted Santore in carrying on such enterprise, then he, Casella, would be legally held to have possession of the narcotics the same as Santore" (T.T. p. 376).[9] If such possession, continued the Court, is inferred, then the jury need not be concerned "with the question of importation of the drug into the United States, unless such importation" played some part in the explanation, if any, of the *inferred* possession of the petitioner. Such a chain of inferences, as substitutes for established facts, placed more of a burden upon the petitioner than even that contemplated by Congress in its built-in presumptions con-

9. It should be borne in mind that although Casella and Santore were tried together, there was no charge of conspiracy; rather each was charged with the substantive offense.

tained in 21 U.S.C. §§ 174 and 176a. Congress certainly did not intend to dispense with proof of criminal guilt by the use of statutory presumptions, nor could it do so. See *Leary* at pages 53–55, 89 S.Ct. 1532.

Although the testimony of prior sales and meetings between the two agents and the two defendants, to which objection was made, was susceptible of the inference that Casella aided and abetted Santore in the commission of the offense on January 23, 1958, hence that he had *constructive possession* [10] of the narcotic drugs on that date, it was equally susceptible of the inference that Santore may have decided that he no longer needed Casella as a partner, if he ever was at all, and that Santore was in business for himself. Such an inference may well have been warranted, especially so, since Casella was not present on this occasion at which time the largest and most costly transaction occurred, and further, since Santore had direct sources of supply (T. T. pp. 199, 207, 211–212, 217–218). As we view it, the harm was done when the jury was told "you will * * * not concern yourself with the question of importation of the drug into the United States." Such an instruction, of necessity, foreclosed any consideration by the jury of any inference which might have been favorable to the petitioner. Guilt was ordained.

In *Leary*, the Supreme Court was concerned with the constitutionality of the statutory presumption contained in 21 U.S.C. § 176a. It focused its attention upon the need for factual, rather than inferred, proof of "actual knowledge" of users of marihuana, at least a majority of them, regarding both foreign and domestic origin and growth of the plant; it required that some reliable evidence be produced upon which to predicate a particular defendant's awareness in fact of illegal importation of marihuana before a jury might be permitted to infer

the ultimate fact of knowledge. The Court made an extensive inquiry into reports and materials which might justify the creation of the statutory presumption by Congress regarding sources of marihuana, and found proper foundations in fact to be wanting. See 395 U.S. at pp. 52–53 and n. 116, 89 S.Ct. 1532. In this regard it referred to the case of United States v. Adams, 293 F.Supp. 776 (D.C.S.D.N.Y.1968), as being the only lower court which conducted a factual inquiry comparable to its own and which likewise held that the statutory presumption was unconstitutional. And, as noted further by the Court, the lack of such evidence in the trial record was the ground for the Court of Appeals decision in United States v. Gibson, 310 F.2d 79, 82 (2 Cir. 1962). Although the presumption of knowledge confronting us is that contained in *section* 174 of the same *Title,* and is in identical language (except for the designation of "marihuana" in § 176a and "narcotic drugs" in § 174) as heretofore indicated, the Court reserved decision on the question of whether the statutory presumption of knowledge of illegal importation of so-called "hard" narcotics, such as opium, heroin and coca leaves, was constitutional, as that question was not then before the Court. (395 U.S. at page 45 note 92, 89 S.Ct. 1532.) As stated in *Leary* at pages 37–38, 89 S.Ct. at p. 1549:

"In order thus to determine the constitutionality of the 'knowledge' inference, one must have direct or circumstantial data regarding the beliefs of marihuana users generally about the source of the drug they consume. Such information plainly is 'not within specialized judicial competence or completely commonplace,' United States v. Gainey, supra, at 67, 85 S.Ct. 754, 13 L.Ed.2d 658."

---

10. "Constructive possession" is a legal fiction employed as a policy measure in the law in construing facts; hence it is an inference or implication imposed by legal interpretation. See: Black's Law Dict. (4th ed. 1951) p. 386.

After exhaustive research of available authorities, the Court stated at page 52, 89 S.Ct. at pp. 1556–1557:

"We conclude that the 'knowledge' aspect of the § 176a presumption cannot be upheld without making serious incursions into the teachings of *Tot*, *Gainey*, and *Romano*. In the context of this part of the statute, those teachings require that it be determined with substantial assurance that at least a majority of marihuana possessors have learned of the foreign origin of their marihuana through one or more of the ways discussed above.

"We find it impossible to make such a determination."

Such language gives one pause when viewing criminal statutory presumption with regard to even the so-called "hard" line of narcotics. For instance, that opium or heroin, as a derivative, is imported from Far East markets may have been known to a present limited segment of our people of older generations conversant with the exploits of Sax Rolmer's notorious "Dr. Fu Manchu." By no means does it follow that today, as a matter of common knowledge, that at least the majority of users of opium or heroin may be presumed to know whether the original source or manufacture of their drugs is foreign or domestic.[11] Modern generations may be well aware that heroin is manufactured in *both* foreign and domestic markets; that perhaps the Eurasian opium poppy, the original source of opium, may find its way into the United States as a raw product before smoking opium and heroin are manufactured from it in this country. In this regard, Agent Marshall testified, at page 21 of the Trial Transcript, that on January 21, 1958, more than a day before the alleged offense was committed, Santore told him that " * * * there would be a delay of at least 24 hours or more in the delivery of the drugs * * * that the opium was still being cooked down south, and not all the cans were ready for deliv-

ery." Certainly, the time interval confined the term "south" to the southern portion of the United States and obviously not to the southern regions of China or Asia. See Marks v. United States, 196 F. 476 (2 Cir. 1912) holding that the conversion of hard crude opium into a molasses-like substance fit for smoking by cooking within the United States was a manufacturing of the narcotic drug contrary to law. It would seem, then, that opium, and its derivative heroin, may well be manufactured within the United States, rather than merely imported from without, with or without the actual knowledge of the majority of users charged with its possession; further, that the problem of logical probability as a foundation for the statutory presumption of knowledge of illegal importation from mere possession in criminal cases still persists. In Erwing v. United States, 323 F.2d 674 (9 Cir. 1963), no proof was introduced to show cocaine hydrochloride was imported. However, extensive expert testimony was introduced at trial to the effect that all of the cocaine hydrochloride derived from coca leaves, a South American shrub, dispensed in California in the Los Angeles area came from domestic sources. The case went to the jury solely on the basis of the presumption in *section* 174. The Court of Appeals found no rational connection between the basic fact of possession and the presumed fact of illegal importation *and* the knowledge thereof regarding cocaine hydrochloride. The same court refused to consider the issue unless some proof of importation had been adduced in the trial court in United States v. Martinez, 333 F.2d 80 (2 Cir. 1964), cert. den., 379 U.S. 907, 85 S.Ct. 199, 13 L.Ed.2d 178 (1964), and in United States v. Reid, 347 F.2d 344 (2 Cir. 1965). Cf. United States v. Coke, 364 F.2d 484 (1966), cert. den., 386 U.S. 918, 87 S.Ct. 877, 17 L.Ed.2d 789 (1967), where no proof either way regarding the source of cocaine hydrochloride was in-

---

11. For that matter, the sources of opium and heroin are not even indicated in Webster's Third New International Dictionary (1963), except to indicate that heroin is a derivative of opium.

troduced, but a short excerpt from reports of the Narcotics Commissioner was supplied by the convicted appellant to the Court of Appeals. This, too, was held to be an insufficient record to dispose of the question of the constitutionality of the presumption. However, the court did affirm the conviction in any event, and certiorari was denied, 386 U.S. 918, 87 S.Ct. 877, 17 L.Ed.2d 789 (1967).

It is the opinion of this Court that *Leary* squarely disposes of the issues on this petition regarding the tax counts of the indictment. As stated by the Court under Part I of its opinion at page 28, 89 S.Ct. at p. 1544:

"The aspect of the self-incrimination privilege which was involved in *Marchetti,* \* \* \* is not the undoubted right of an accused to remain silent at trial. It is instead the right not to be criminally liable for one's previous failure to obey a statute which required an incriminatory act." (italics in opinion.)

Mr. Justice Stewart reluctantly joined the majority on Part I because of what he considered to be an unwarranted drift in *Marchetti* and *Grasso* away from testimonial self-incrimination. He concurred, without comment, with the disposition of the statutory presumption set forth in Part II of the opinion. Mr. Justice Black concurred in full with the majority. His opinion is singularly appropriate in light of the general way in which this petitioner states what he conceives to be his constitutional claims:

"That section (28 U.S.C. § 176a substantially similar to 174 of that Title) makes it a crime to import marijuana into the United States or to receive, conceal, or transport it, knowing it to have been imported contrary to law, and then goes on to provide that the mere possession of marijuana shall be 'deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury.' The trial court in this case charged the jury that proof that petitioner merely had possession of marijuana was sufficient to authorize a finding that he knew it had been imported or brought into the United States contrary to law. It is clear beyond doubt that the fact of possession alone is not enough to support an inference that the possessor knew it had been imported. Congress has no more constitutional power to tell a jury it can convict upon any such forced and baseless inference than it has power to tell juries they can convict a defendant of a crime without any evidence at all from which an inference of guilt could be drawn. See Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). Under our system of separation of powers, Congress is just as incompetent to instruct the judge and jury in an American court what evidence is enough for conviction as the courts are to tell the Congress what policies they must adopt in writing criminal laws. The congressional presumption, therefore, violates the constitutional right of a defendant to be tried by jury in a court set up in accordance with the commands of the Constitution. It clearly deprives a defendant of his right not to be convicted and punished for a crime without due process of law, that is a trial in federal cases before an independent judge, after an indictment by grand jury, with representation by counsel, an opportunity to summon witnesses in his behalf, and an opportunity to confront the witnesses against him. This right to a full-fledged trial in a court of law is guaranteed to every defendant in Article III of the Constitution, in the Sixth Amendment, and in the Fifth and Fourteenth Amendments' promises that no person shall be deprived of his life, liberty, or property without due process of law—that is, a trial according to the law of the land, both constitutional and statutory." (Parentheses supplied) 395 U.S. pp. 55–56, 89 S.Ct. p. 1558.

Indeed, it would seem that Mr. Justice Black has stated the case very well for this petitioner.

In conclusion, the record in this case makes it impossible for us now, or for the jury at the time of trial, to estimate "even roughly the proportion" of opium and heroin possessors who have learned in one way or another of the origin of their narcotic drugs (395 U.S. at page 52, 89 S.Ct. 1532), in order to sustain the statutory presumption on the empirical theory of probability of knowledge of illegal importation from the mere fact of possession. As stated by Judge Frankel in United States v. Adams, 293 F.Supp. 776 (D.C.S.D.N.Y. 1968), at pages 783–784:

> "No authority in any relevant context has ever suggested that the statutory inference was intended, or may properly serve, to lighten the prosecution's burden of proof beyond a reasonable doubt. On the contrary, it is routine and standard practice under 21 U.S.C. § 176a, as under § 174, to instruct the jury * * * that no conviction may be had unless the prosecution has proved *each element of the offense*—including importation *and* knowledge thereof—beyond a reasonable doubt. See, e. g., United States v. Gibson, 310 F.2d 79, 81 (2d Cir. 1962); United States v. Peeples, 377 F.2d 205, 211 (2d Cir. 1967); United States v. Llanes, 374 F.2d 712, 714, 716 (2d Cir. 1967). (italics in opinion.)

When this record is examined, in light of the pronouncements contained in *Leary*, it demonstrates that, with regard to compulsory self-incrimination under Counts III and IV, the petitioner was denied a fair trial as guaranteed to him and that he did not waive such constitutional privilege. *Leary*, supra, at pages 27–28, 89 S.Ct. 1532. We must indulge every reasonable presumption against a waiver of such a basic constitutional right. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); Masterson v. United States, 293 F.Supp. 787 (D.C.Del. 1968). With respect to Counts 1 and

II, charging guilty knowledge of importation of the narcotic drugs, the constitutionality of the statutory presumption of 21 U.S.C. § 174 has withstood constitutional attack because the proven fact of defendant's possession has been considered as circumstantial evidence rationally related to the presumed fact of knowledge. Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); United States v. Peeples, 377 F.2d 205, 209 (2 Cir. 1967) and cases collected therein. As stated in *Peeples,* at page 209:

> "However, if the jury is instructed to consider proof of possession as conclusive proof of guilt rather than as merely proof from which to draw permissible inferences in order to find from the proven fact the two remaining essential facts that must be proven in order to establish the commission of the offense, the statute would be misconstrued into creating a new federal crime of possession which might be of dubious constitutionality." (citing authorities.)

We quite agree. And, as pointed out in *Peeples* at page 210, the jury must be left free to believe, if it wishes to believe, any evidence indicating a defendant's lack of knowledge. The jury in the instant case was left no such choice. See also, Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), in which a prosecution for conspiracy to commit an offense under the *National Stolen Property Act* was conducted. An instruction to the jury that the possession of property shortly after it had been stolen in another State created a presumption that the possessor had transported the property in interstate commerce, constituted reversible error. Mr. Justice Frankfurter stated at page 614, 66 S.Ct., at p. 406 that—"Legal presumptions involve subtle conceptions to which not even judges always bring clear understanding." And most appropriately on the same page he remarked:

> "In view of the Government's insistence that there is abundant evidence to indicate that Bollenbach was

implicated in the criminal enterprise from the beginning, it may not be amiss to remind that the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts."

Petitioner's constitutional rights having been fatally infected, the motion to vacate his conviction and sentence will be granted. Consequently, the question of the constitutionality of the criminal presumption contained in 21 U.S.C. § 174 need not and is not resolved *nisi prius*. For it must be observed that courts, particularly trial courts, are reluctant to annul *Acts* of Congress unless they are compelled to do so by necessity in the exercise of judicial power in a particular case. United States v. Gainey, supra.

Now, therefore, it is on this 8th day of October, 1969 ordered that the judgment of conviction and sentence of Peter Casella on Criminal Indictment No. 151–58, be and the same are hereby vacated. It is further ordered that he shall stand trial or otherwise plead to the aforesaid indictment.

