Peter CASELLA

v.

**UNITED STATES of America, Appellant.**

No. 18447.

United States Court of Appeals, Third Circuit.

Argued June 24, 1971.

Decided Sept. 29, 1971.

As Amended Oct. 27, 1971.

D. William Subin, Asst. U. S. Atty., Camden, N. J. (Frederick B. Lacey, U. S. Atty., Newark, N. J., on the brief), for appellant.

Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for appellee.

Before BIGGS, and VAN DUSEN, Circuit Judges, and KRAFT, District Judge.

I. As follows:

### COUNT I

That on or about the 23rd day of January, 1958, in the Township of Washington, County of Gloucester, State and District of New Jersey,

PETER CASELLA and
JAMES SANTORE

did fraudulently, knowingly and feloniously sell certain narcotic drugs, to wit, 172 ounces, 35 grains of heroin and four jars containing opium, gross weight 49 ounces, 36½ grains, after the same had been fraudulently, knowingly, and unlawfully imported and brought into the United States contrary to law, the said PETER CASELLA and JAMES SANTORE then and there well knowing the same to have been fraudulently, knowingly and unlawfully imported and brought into the United States contrary to law.

In violation of Section 174, United States Code, Title 21.

### COUNT II

That on or about the 23rd day of January, 1958, in the Township of Washington, County of Gloucester, State and District of New Jersey,

PETER CASELLA and
JAMES SANTORE

did fraudulently, knowingly and feloniously receive, conceal and buy certain narcotic drugs, to wit, 172 ounces, 35 grains of heroin and four jars containing opium, gross weight 49 ounces, 36½ grains, after the same had been fraudulently, knowingly and unlawfully imported and brought into the United States contrary to law, the said PETER CASELLA and JAMES SANTORE then and there well knowing the same to have been fraudulently, knowingly and unlawfully imported and brought into the United States contrary to law.

In violation of Section 174, United States Code, Title 21.

21 U.S.C., Section 174, provides in pertinent part:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States * * * contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. * * *

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

### COUNT III

That on or about the 23rd day of January, 1958, in the Township of Washington, County of Gloucester, State and District of New Jersey,

PETER CASELLA and
JAMES SANTORE

did knowingly, unlawfully and feloniously sell certain narcotic drugs, to wit, 172 ounces, 35 grains of heroin and four jars containing opium, gross weight 49 ounces, 36½ grains, which were not in or from the original stamped package.

In violation of Section 4704(a), United States Code, Title 26.

26 U.S.C., Section 4704(a) provides in pertinent part:

"It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

### COUNT IV

That on or about the 23rd day of January, 1958, in the Township of Washington, County of Gloucester, State and District of New Jersey,

## OPINION OF THE COURT

BIGGS, Circuit Judge.

This is a proceeding brought by Casella pursuant to 28 U.S.C. Section 2255 to relieve himself of judgments of conviction and of sentence as set out hereinafter. He was indicted on a four count indictment[1] filed April 15, 1958, along

with Santore. It will be observed that Casella and Santore were indicted as principals but that an aider and abettor is liable as a principal pursuant to 18 U.S.C. Section 2.[2] In the Casella-Santore trial, Marshall, a narcotics agent of the United States, testified that Santore told him and other narcotics agents that upon inquiry of Santore as to where were the cans of opium, Santore stated that "the opium was still being cooked *down south*, and not all the cans were ready for delivery." (Emphasis added). This was the only statement or "explanation", if the latter term may be justly used, respecting the origin of the drugs.

The Trial Judge (Madden, J.) after reciting in substance the four counts of the indictment, in charging the jury, stated: "[I]n common parlance * * * the first count is the count which charges the sale of narcotic drugs, the second count is the count which charges receipt, concealment or the buying of certain narcotic drugs, the third count charges the sale of narcotic drugs which weren't in the original stamped package, tax-stamp container, and the fourth count is the count which charges the sale of narcotic drugs not in pursuance of a written order form as designated by the United States Treasury Department."

As to 21 U.S.C. Section 174, Judge Madden went on to say: "[I] repeat what I consider the important portions of this statute, as it pertains to this case: 'Whoever * * * receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought into the United States contrary to law, shall be * * * guilty. * * *' 'Whenever on trial for a violation of this subsection the defendant is shown to have or have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.' Congress, likewise, has seen fit to pass another section relating to the handling in proper fashion of narcotic drugs, and the prohibition of them. I am now reading from section 4704 of Title 26: 'It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate tax paid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.' Now, another thing that Congress has forbidden is this, and I am now reading from Section 4705(a) of Title 26: 'It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the

PETER CASELLA and
JAMES SANTORE
did knowingly, unlawfully and feloniously sell certain narcotic drugs, to wit, 172 ounces, 35 grains of heroin and four jars containing opium, gross weight 49 ounces, 36½ grains, which said sale was not made in pursuance of a written order of the person to whom such narcotic drugs were sold on a form issued in blank for that purpose by the Secretary of the Treasury of the United States or his delegate.
In violation of Section 4705(a), United States Code, Title 26.
26 U.S.C., Section 4705(a) provides in pertinent part:
"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

2. Section 2 follows:
"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Secretary or his delegate.' That means the Secretary of the Treasury or his delegate. You know when you go to the doctor, and he prescribes a narcotic drug, he gives you a prescription on a blank piece of paper that he writes out. That is the form that is normally prescribed by the Secretary of the Treasury."

Judge Madden also said: "There has been considerable comment, ladies and gentlemen [of the jury], made that there is no showing that the defendant Casella ever had possession of the narcotics in question or that they were imported into the United States. I will now read to you section 2 of Title 18: 'Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission is a principal.' That means one who aids, abets, counsels, induces or procures another in the commission of a crime is just as guilty as one who actually performs the act. I have read to you the statute making one who aids, abets, counsels or procures another in the commission of a crime equally guilty as a principal, so, if you find that the defendant Santore had possession of the narcotics in question, and you further find that the defendant Casella had knowledge of Santore's conduct, and that Casella aided and abetted Santore in carrying on such enterprise, then he, Casella, would be legally held to have possession of the narcotics the same as Santore. This, then, if you so find, would bring into full force and effect that portion of the statute that I have previously read to you: 'Whenever on trial for a violation of this subsection, the defendant is shown to have or have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.' So, ladies and gentlemen, if you find that the defendants had possession of the drug, you will then consider whether the defendant or defendants have explained their possession to your satisfaction, as required under the statute, and not concern yourself with the question of importation of the drug [3] into the United States unless such importation would play some part in the explanation made by the defendants. If the explanation of possession made by the defendants is sufficient to raise in your mind a reasonable doubt as to the guilt of the defendants, then they would be entitled to a verdict of acquittal."[4] (Emphasis added.)

Nothing more was said by the Court in its charge relevant to the issues of importation or possession or presumptions related to possession by Santore.

Casella and Santore were found guilty on all counts and Casella was sentenced as appears from the judgment of sentence thus: "It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of 15 years on each of Counts 1 and 2, and on Counts 3 and 4 a term of ten years on each of said counts. It is the further Order of this Court that the sentence on Counts 1 and 2 be concurrent with each other, and the sentence on Counts 3 and 4 be concurrent with each other, but that the sentence on Counts 3 and 4, while concurrent with each other, shall be consecutive to the terms imposed on Counts 1 and 2. The said terms imposed hereunder of a total of 25 years shall be concurrent with the first 25 years of the sentence of 40 years imposed by the Honorable Gregory F. Noonan, Judge of the United States District Court for the Southern District

---

3. The use of the singular word "drug" is not accurate because there were two drugs involved, opium and heroin, a derivative of opium, but the drugs, opium and heroin, named in all four counts were the same and it is not necessary to distinguish between opium and heroin in our decision in this case.

4. Tr. 376–377.

of New York, on July 31st, 1958." [5] Casella appealed to this court, principally on the ground of entrapment but the judgments of conviction were affirmed.[6]

In 1969 Casella filed the present Section 2255 motion to vacate the judgments of conviction and sentence imposed on him in 1959. After hearing the Trial Judge in the Section 2255 proceeding (Cohen, J.) ordered "that the judgment and sentence of * * * Casella on Criminal Indictment No. 151–58, be and the same are hereby vacated.",[7] and further ordered "that he shall stand trial or otherwise plead to the aforesaid indictment." [8]

We have quoted the words of Agent Marshall in testifying to the statement made to him by Santore when all of the ordered cans of opium had not been delivered that the opium was still being cooked "down south".[9] Judge Cohen addressed himself to the issue of importation, stating in part: "Certainly, the time interval confined the term 'south' to the southern portion of the United States and obviously not to the southern regions of China or Asia. See Marks v. United States, 196 F. 476 (2nd Cir. 1912) holding that the conversion of hard crude opium into a molasses-like substance fit for smoking by cooking within the United States was a manufacturing of the narcotic drug contrary to law. It would seem, then, that opium, and its derivative heroin, may well be manufactured within the United States, rather than merely imported from without, with or without the actual knowledge of the majority of users charged with its possession; further, that the problem of logical probability as a foundation for the statutory presumption of knowledge of illegal importation from mere possession in criminal cases still persists. In Erwing v. United States, 323 F.2d 674 (9 Cir. 1963), no proof was introduced to show cocaine hydrochloride was imported. However, extensive expert testimony was introduced at trial to the effect that all of the cocaine hydrochloride derived from coca leaves, a South American shrub, dispensed in California in the Los Angeles area came from domestic sources." [10]

As we read the record of the trial before Judge Madden and Judge Cohen's opinion in the Section 2255 proceeding, we think it is clear that both Judges viewed Santore's statement as some evidence of non-importation of the drugs and we conclude that they were correct in doing so. Judge Cohen also stated: "In the instant case the essential element of the guilty knowledge of illegal importation of narcotic drugs was predicated upon 'possession,' which in turn depended upon a finding of aiding and abetting one who did in fact have possession. * * *" 304 F.Supp. at 760.

5. The appeals from the judgments of conviction in this case appear at United States v. Santore, 290 F.2d 51 (1960), cert. den. 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744 (1961).

6. United States v. Santore, 270 F.2d 503 (1959), cert. den. Casella v. United States, 361 U.S. 930, 80 S.Ct. 370, 4 L.Ed. 2d 353 (1960).

7. In our view the order made by the Trial Judge vacated the four judgments of conviction and sentence on each of the four counts of the indictment. We can perceive no other interpretation of the words employed by the Trial Judge.

8. The indictment at No. 151–58 is that set ont in note 1 of this opinion.

9. A small semantic essay could be written on the word "south" and the phrase "down south." The noun "south" is described in Webster's New International Dictionary of the English Language, Second Ed., at "3" as "That part of the United States south of Mason and Dixon's line, the Ohio River, and the southern boundaries of Missouri and Kansas." As we all know, the chorus of "Dixie", by Daniel D. Emmett (1859) has a line "Away *down south* in Dixie." (Emphasis added.) See Song Dex Treasury of Humorous and Nostalgic Songs, p. 345. It would appear that the phrase "down south" has a well defined meaning and ordinarily at least describes the southern part of the United States. On the other hand, it can be argued that the word "south" in this case can mean any place on the compass south of Atlantic City, New Jersey.

10. 304 F.Supp. 756, at 762 (D.N.J.1969).

But Judge Cohen went further and concluded that the language quoted from Judge Madden's charge compelled the jury to find importation into the United States; in short, that the presumption of Section 174 was paramount and controlling and therefore no explanation could suffice to relieve Santore of a guilty mind, his *mens rea* being established as a matter of law, and hence Casella's as an aider and abettor.

Judge Cohen cited in support of his position Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), in particular at 45, *n.* 92, 53–55, and 21 U.S.C. Section 176a, which he thought presented a view which properly could be analogized to Casella's case and therefore controlled it in Casella's favor. His citations from the *Leary* opinion are not irrelevant but Judge Cohen did not have the advantage of the opinion of the Supreme Court in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610, decided January 20, 1970.[11] In the *Turner* case, Mr. Justice White stated for the Court at 405–407, 90 S.Ct. at 646, under heading "II.", as follows: "We turn first to the conviction for trafficking in heroin in violation of § 174. Count 1 charged Turner with (1) knowingly receiving, concealing, and transporting heroin which (2) was illegally imported and which (3) he knew was illegally imported. See Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959). For conviction, it was necessary for the Government to prove each of these three elements of the crime to the satisfaction of the jury beyond a reasonable doubt. The jury was so instructed and Turner was found guilty.

"The proof was that Turner had knowingly possessed heroin; since it is illegal to import heroin or to manufacture it here, he was also chargeable with knowing that his heroin had an illegal source. For all practical purposes, this was the Government's case. The trial judge, noting that there was no other evidence of importation or of Turner's knowledge that his heroin had come from abroad, followed the usual practice and instructed the jury—as § 174 permits but does not require—that possession of a narcotic drug is sufficient evidence to justify conviction of the crime defined in § 174.

*"The jury, however, even if it believed Turner had possessed heroin, was not required by the instructions to find him guilty. The jury was instructed that it was the sole judge of the facts and the inferences to be drawn therefrom, that all elements of the crime must be proved beyond a reasonable doubt, and that the inference authorized by the statute did not require the defendant to present evidence. To convict, the jury was informed, it 'must be satisfied by the totality of the evidence irrespective of the source from which it comes of the guilt of the defendant. * * *' The jury was obligated by its instructions to assess for itself the probative force of possession and the weight, if any, to be accorded the statutory inference. If it is true, as the Government contends, that heroin is not produced in the United States and that any heroin possessed here must have originated abroad, the jury, based on its own store of knowledge, may well have shared this view and concluded that Turner was equally well informed. Alternatively, the jury may have been without its own information concerning the sources of heroin, and may have convicted Turner in reliance on the inference permitted by the statute, perhaps reasoning that the statute represented an official determination that heroin is not a domestic product.*

"Whatever course the jury took, it found Turner guilty beyond a reasonable doubt and the question on review is the sufficiency of the evidence, or more precisely, the soundness of inferring guilt from proof of possession alone. Since

11. Judge Madden, of course, did not have
   *Turner* before him since the Santore-

Casella trial had taken place more than
a decade before that decision.

the jury might have relied heavily on the inferences authorized by the statute and included in the court's instructions, our primary focus is on the validity of the evidentiary rule contained in § 174." (Notes omitted and emphasis added.)[12]

■ Judge Madden need not have charged the jury at all on the inferences to be drawn from possession of the drugs; he could have remained completely silent as was held permissible in *Turner*. Casella's contention, however, is that instead of remaining silent he gave a charge which withdrew from the jury the determination of one essential element of the crime, namely, whether Casella had knowledge of illegal importation. We so construe the charge. Judge Madden therefore committed fundamental constitutional error in the light of the Sixth and Fourteenth Amendments.[13]

The error went to the fact finding process and therefore Judge Cohen was correct in retroactively obliterating the judgments of conviction on Counts I and II. Cf. Bannister v. United States, 446 F.2d 1250 (3 Cir. 1971).

In respect to Counts III and IV Judge Cohen ruled that the underlying statutes, 26 U.S.C. §§ 4704(a) and 4705(a), were unconstitutional in light of Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

■ Specifically in respect to Count III, Section 4704(a) has been held constitutional by this court in United States

v. Clark, 425 F.2d 827 (1970) and Wilson v. United States, 426 F.2d 246 (1970).[14] Casella, however, argues on appeal that it was fundamental error for Judge Madden to merely recite verbatim the words of Section 4704(a) without explanation. While we think that it would have been the preferable course for Judge Madden to have elaborated on the meaning of this statute in the context of the case, particularly since he went into some explanation of the other statutes involved in the indictment, we cannot deem the error to charge as suggested by Casella's counsel in this court to be of such fundamental nature as to require reversal.

■ With respect to Count IV the Supreme Court in an opinion filed subsequent to Judge Cohen's opinion held that 26 U.S.C. § 4705(a) was constitutional. Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969). The judgments on Count IV must stand. No assumption or presumption or inference was relevant, nor was the charge in any way improper or not justified in law. There was ample evidence to enable the jury to find beyond a reasonable doubt that Santore sold the drugs without employing the form required for that purpose the drugs without employing the form required for that purpose by the Secretary of the Treasury or by his delegate. Casella aided and abetted that transaction.

Casella made a vigorous argument but one which we have had difficulty in grasping in respect to the aiding and

12. Mr. Justice White stated in *Turner* at 403, 90 S.Ct. at 645: "The statutory inference created by § 174 has been upheld by this Court with respect to opium and heroin. * * * "

13. We are informed by a letter from the Clerk of the United States District Court for the District of New Jersey to the Clerk of this court that the requests for charge of the parties and the transcript of the arguments of counsel to the jury "were never ordered by the defendant."
This material cannot now be procured for examination for the Clerk's letter informs us that Mr. Charles J. Degnan, Judge Madden's court reporter, "left the

Government service in the spring of 1970 and at that time all his records which were ten years old or older were destroyed." Since Casella's counsel did not see fit to include in the record the transcription of the requests for charge and the arguments of counsel we treat this material as irrelevant. We point out that ten years had passed following Casella's conviction before the Section 2255 motion was filed.

14. At the time of his decision in the instant case Judge Cohen could not have had before him these decisions of this court.

abetting statute set out in note 2, *supra.* He seems to contend that the provisions of Section 2 should not and cannot apply where guilt from possession may be inferred under Section 174 or Section 4704(a). It is not necessary, however, in the light of our decision to determine such an issue.

The judgments caused to be entered by Judge Cohen on Counts I and II will be affirmed, but the judgments entered by him on Counts III and IV will be reversed. The case will be remanded with directions to reinstate the judgments of conviction and sentence on Counts III and IV.

We thank this court's appointed counsel, Edward C. Toole, Jr., Esquire, for his careful, thoughtful work on behalf of his client.