STATE OF MAINE

*vs.*

CARROLL DEMERRITT

Oxford.    Opinion, December 30, 1953.

*Henry H. Hastings,* for State.

*Berman & Berman,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, WEBBER, JJ. TIRRELL, J., did not sit.

FELLOWS, J.   This is an indictment in Oxford County Superior Court for operating a motor vehicle while under the influence of intoxicating liquor.  It comes to the Law Court on respondent's exceptions to the sustaining of the State's demurrer to respondent's special plea in bar, and exceptions to the denial of the respondent's motion for a directed verdict.

The respondent, Carroll Demerritt, then Chief of Police of the town of Rumford, Maine, was indicted by the Grand Jury at the November Term, 1952 for operating a car on Waldo Street in Rumford, November 2, 1952, while under the influence of intoxicating liquor. The indictment was returned on November 13, 1952. The respondent was tried and the jury found a verdict of guilty.

The alleged act took place a few minutes after midnight on Saturday, November 1, 1952 near "210 Club" so-called, where local police officers, a deputy sheriff and several State liquor inspectors were busily engaged in the investigation of alleged violations of the liquor law at the Club, and were making search of the premises. The county attorney was in the neighborhood. The respondent drove his car to a point about the center of the street near the place where the officers were investigating, and where many civilian spectators had gathered.

Wilfred J. Bouffard, a local storekeeper, testified that when the respondent drove up "he opened the door and staggered out of his car. When he did I went up and told him 'get back in your car. There are too many people here that will see you. Get back into your car,' and he gave me an argument * * *. He says 'Bouffard, you can't make me move' and he used some profane language * * * he held onto the fender and slipped. I picked him up again." On the Tuesday following this early Sunday morning episode, the respondent told Bouffard at his store, "I can't recall what happened that night. All I had was about three drinks."

After speaking to one or more of the officers who came into the street, and after a deputy sheriff had told him to "take off," the respondent drove away. No arrest of the respondent was made on this Sunday morning, November 2, 1952. State Police Officer Weeks, who was with the county attorney from 1:30 A. M. until 4:15 A. M. on Sunday morning, stated that they "cruised around" looking for the re-

spondent, but did not call at his house, and did not find him. No warrant was applied for at the Municipal Court although the respondent (with other police officers of Rumford) was present in line of duty, when the Municipal Court was in session on Monday, November 3, 1952.

At the November Term of the Superior Court an indictment was found by the Grand Jury against the respondent, and returned eleven days after the alleged act.

Before the trial at the November, 1952 term, the respondent filed a special plea in bar, praying judgment for the respondent, and setting forth as grounds for the special plea in bar, a violation of the respondent's constitutional rights under the Fifth and Fourteenth Amendments of the Constitution of the United States, and under Article I, Sections 1 and 6 of the Constitution of the State of Maine.

The respondent's claim of infringement of his constitutional rights was based upon the fact that the State permitted a period of eleven days to intervene between the alleged date of commission of the offense and the arrest of the respondent under the indictment. The respondent claims that such delay made it impossible for him to avail himself of his right to request a blood test under Section 121, Chapter 19 of the Revised Statutes of Maine, 1944.

The Superior Court has original concurrent jurisdiction with Municipal Courts and trial justices over prosecutions for the offense of operating under the influence of intoxicating liquor. R. S., 1944, Chap. 19, Secs. 121 and 134; *State* v. *Boynton,* 143 Me. 313, 322.

The only bar to prosecutions under this statute with regard to lapse of time is the statute of limitations. The limitation is six years. R. S., 1944, Chap. 132, Sec. 17; *State* v. *Boynton,* 143 Me. 313, 322; *State* v. *Thompson,* 143 Me. 326. There is no inherent or constitutional right to drive a dangerous automobile on the highway, and whether one

shall be permitted to exercise the right and under what conditions and restrictions is a matter for the legislature. *State v. Mayo,* 106 Me. 62. It is only when the State's evidence is so weak or defective that a verdict of guilty cannot be sustained that a motion for a directed verdict should be allowed. *State v. Cady,* 82 Me. 426; *State v. Sullivan,* 146 Me. 381.

The respondent contends that both under the State and Federal Constitutions the verdict below should be set aside and that he should be discharged. The question presented to this court is whether the State, through the fact that the county attorney, several deputy sheriffs and several police officers had an opportunity to see the respondent, and did not then arrest him for the offense of driving under the influence of intoxicating liquor, deprived the respondent of his right to have a blood test. "By lulling him into a feeling of security" the respondent claims, he was deprived of a right. In other words, whether or not an indication that an automobile driver, who may be under the influence of intoxicating liquor, will not *now* be arrested is a violation of constitutional rights to secure a blood test.

The pertinent part of the blood test statute in question reads as follows:

"Evidence that there was, at the time, 7/100%, or less, by weight, of alcohol in his blood, is prima facie evidence that the defendant was not under the influence of intoxicating liquor within the meaning of this section.

Evidence that there was, at that time, from 7/100% to 15/100% by weight, of alcohol in his blood is relevant evidence but it is not to be given prima facie effect in indicating whether or not the defendant was under the influence of intoxicating liquor within the meaning of this section.

Evidence that there was, at the time, 15/100%, or more, by weight, of alcohol in his blood, is prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section.

The failure of a person accused of this offense to have tests made to determine the weight of alcohol in his blood shall not be admissible in evidence against him."

Revised Statutes, 1944, Chapter 19, Section 121.

The Constitution of the United States, which the respondent claims was violated, is the Fourteenth Amendment, the pertinent part of which is as follows:

"Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The sections of our State Constitution are Article I, Section 1, which read as follows:

"All men are born equally free and independent, and have certain natural, inherent and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness."

and parts of Section 6 of this same Article are as follows:

"In all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election;
To be confronted by the witnesses against him;
To have a speedy, public and impartial trial; * * *
He shall not be compelled to furnish or give evidence against himself, nor be deprived of his life, liberty, property or privileges, but by judgment of his peers, or by the law of the land."

The respondent's affirmative rights under the State and Federal Constitutions are not determined by the evidence against him. If there is a violation of a constitutional right the respondent is entitled to a discharge. *State* v. *King,* 123 Me. 256; *State* v. *Beane,* 146 Me. 328; *State* v. *Brown,* 142 Me. 16.

In interpreting the Maine Constitution "law of the land" the same rules are applicable as under the "Due Process Clause" of the U. S. Constitution. "Due process" and "law of the land" have the same meaning. *Jordan* v. *Gaines,* 136 Me. 291.

The foregoing "blood test statute" gives a respondent no "privilege." Any person can have a blood test at any time, and the result can be testified to in court under the common law as a scientific fact. So can any relevant fact be testified to in the trial of a case, if not otherwise inadmissible by some rule of exclusion. *McCulley* v. *Bessey,* 142 Me. 209, 214; *Rawley* v. *Palo Sales,* 144 Me. 375, 380. The statute itself reognizes this and gives no privilege. The statute simply says "evidence that there was at the time" a certain percentage of alcohol in the blood makes the test either "prima facie" evidence that he was, or that he was not, under the influence, or makes it evidence to be considered with no prima facie effect, depending in each case on the particular percentage found. The only privilege given by the statute (if in fact a statute is necessary to give it) is, that a failure to permit a blood test to be made, is not evidence against an accused.

The respondent was not deprived of his right to have a blood test. He had time and opportunity to go to a doctor and get one if, in fact, he desired one. See *State* v. *Corey,* 145 Me. 231. He was not prevented by any act of the State's officers. He knew that in his condition, because of warnings to "get off the street," that even he—the Chief of Police— might be arrested by some of his own officers or by some other officer, or upon some person's complaint. A police officer of his experience knew that he did not have to be actually arrested when "found intoxicated" as in Revised Statutes, 1944, Chap. 57, Sec. 95, relating to intoxication in a public place. The offense of driving an automobile while intoxicated has a limitation of six years. Revised Statutes,

1944, Chap. 132, Sec. 17. *State* v. *Boynton,* 143 Me. 313; *State* v. *Thompson,* 143 Me. 326.

If this statute gave a "privilege," as the respondent in this case claims, every driver of an automobile who drives under the influence of liquor must be arrested immediately. No person thus breaking the law could ever be convicted and sentenced unless he was "found" so driving and immediately arrested, and be at once permitted to have a blood test if he requested. This would practically result in a statute of limitations of not more than a few hours, which is an absurdity. Officers are not always present when a driver operates his car when under the influence of liquor, and some officers might not arrest if they are present, because the driver might not appear to them as intoxicated, or for other reasons. Some citizen might know, or the driver might appear intoxicated or under the influence to some other person. The citizen might attempt by complaint within six years to enforce the law. There might also be an investigation and indictment by a grand jury.

The Courts of Maine have zealously guarded the constitutional rights of all citizens including rights under statutes relating to motor vehicles. *State* v. *Corey,* 145 Me. 231; *State* v. *Boynton,* 143 Me. 313. We fail to find in the case at bar that any right of this respondent has not been protected. His trial was absolutely fair. The evidence clearly indicates that all officials were friendly to the respondent Chief of Police and endeavored to protect him. Officers and friends told him to get off the street because the "gallery" of citizens watching the liquor raid would see him. He was not arrested until eleven days later, following an indictment found as a result of investigation by a grand jury. He did not by any trickery of officers, or by any deceit, fall under the influence of intoxicating liquor (if in fact he was under the influence). He was not by deceit led into Waldo Street to witness, with other citizens, an investigating raid of

liquor law enforcement officials. Instead of being "trapped" by his officers, he was told by officers to get off the road. He was not "lulled into a feeling of security," as he now claims, but on the contrary, feeling insecure and liable to arrest, asked prosecuting officials on Sunday to "give him a break" so that members of his family might not suffer because of his arrest.

The record clearly shows that no constitutional right of the respondent was denied or abridged, and under the protective guidance of most capable counsel, he certainly received a fair trial. The State's evidence was amply sufficient for the jury to pass upon it, and if they believed it, to find the respondent guilty.

*Exceptions overruled.*
*Judgment for the State.*