UNITED STATES of America, Appellee,

v.

Gary SINGLETON et al., Appellants.

Nos. 219, 299 and 422, Dockets 75–1114, 75–1209 and 75–1210.

United States Court of Appeals, Second Circuit.

Argued Oct. 1, 1975.

Decided Feb. 13, 1976.

Richard Appleby, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (David G. Trager, U.S., Atty., Paul B. Bergman, Asst. U.S. Atty. E.D.N.Y., of counsel), for appellee.

Edward Malz, Brooklyn, N.Y., for appellant Singleton.

E. Thomas Boyle, The Legal Aid Society, New York City (William J. Gallagher, The Legal Aid Society, New York City, of counsel), for appellant Elmore.

Harry Blum, Brooklyn, N.Y., for appellant Kirby.

Before WATERMAN, OAKES and MES-KILL, Circuit Judges.

MESKILL, Circuit Judge:

Appellants Gary Singleton, William M. Kirby and William Elmore appeal from judgments of conviction entered by the United States District Court for the Eastern District of New York (Bartels, *D. J.*) after a jury trial. All three appellants, challenging the sufficiency of the evidence to sustain their convictions of unlawful possession of stolen mail in violation of 18 U.S.C. §§ 1708 and 2,[1] seek reversals of

1. Section 1708 of Title 18 of the United States Code provides in pertinent part as follows:

"Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter,

their convictions and judgments of acquittal. They also argue in the alternative that they should be granted a new trial because the district court failed to charge the jury with respect to every element of the crime, improperly charged the jury that guilty knowledge might be inferred from aiding and abetting someone possessing recently stolen goods, and prejudiced their trial by improperly and unduly interfering with the presentation of their cases by their counsel. Appellants Singleton and Kirby further allege that the district court abused its discretion by sentencing them under the Narcotics Addict Rehabilitation Act rather than under the Youth Corrections Act. Because we find that the jury charge had the effect of removing a disputed issue from the jury, we reverse the convictions and remand for a new trial.

## I. Sufficiency of the Evidence.

We turn first to the appellants' contention that the evidence was insufficient to sustain their convictions. At the outset, it should be made clear that, in light of our determination in part II of this opinion, we discuss this issue only insofar as it applies to the appellants' demands for judgments of acquittal. The pertinent facts elicited at the trial, viewed in the light most favorable to the government, begin with the testimony of George Atmore, a letter carrier employed by the Postal Service. On June 17, 1974, Atmore was delivering mail in a residential area of Jamaica, Queens. At approximately noon, Atmore parked his mail jeep on 146th Street at the corner of 130th Avenue. He delivered the mail on foot to each house on his route. When he completed a section of his route, he would return to his jeep to pick up another bundle of mail to be delivered on the next section. After he had completed the first section of the route, Atmore noticed a 1968 or 1969 green Ford Falcon with a black vinyl top so close-

ly double parked next to his jeep that "there was no room to walk between the two." He observed two individuals inside and one outside of the car.

While Atmore delivered the next section of his mail route, he kept the car under observation. Atmore testified that he got a good look at the two individuals inside the car but that he could not see the face of the other because that person suddenly bent over and leaned his head into the driver's side window of the car.

Atmore made an in-court identification of Singleton as the person who was seated in the driver's seat and of Kirby as the person in the front passenger seat. He further testified that he had identified both Singleton and Kirby from an array of photographs shown to him by postal inspectors on June 25, 1974, and that he had seen Kirby on several occasions prior to June 17, 1974. Atmore was not able at any time to identify appellant Elmore, but he did describe the individual outside of the car as having been wearing a soft-brimmed cap, a multi-colored shirt and dark trousers. Elmore was wearing clothes matching that description when he was arrested about an hour after Atmore had seen the individual outside of the car. In his summation to the jury, Elmore's counsel conceded that Elmore was the third individual seen near the jeep by Atmore.

When Atmore finished the second section of his mail route, he again returned to his jeep. As he approached the jeep, the car moved slowly away and parked on the other side of the intersection. During the time that the car was moving away from the jeep and through the intersection, Elmore continued to keep his head inside the car's window. When the car came to rest, Elmore remained in that position. At this point, Atmore, his suspicions aroused, wrote down the car's license plate number.

postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

"Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

At about 12:30 p.m., the mail carrier removed the next bundle of mail to be delivered, examined the jeep to satisfy himself that it was well locked, and set off again on his pedestrian rounds. When he returned to the jeep some twelve minutes later, he discovered that the rear door had been pried open and that approximately five hundred pieces of mail were missing.[2] The appellants and the green Ford Falcon were no longer in sight.

Atmore immediately called postal inspectors and gave them the license plate number of the car and descriptions of the appellants and the green Falcon. It was later discovered that the car was registered to Singleton. After searching the Jamaica, Queens area for some time, postal inspectors O'Neill, Cole and Renzulli came upon the car at about 1:30 p.m. at a location approximately 15 to 20 blocks from where the jeep had been parked. The inspectors followed the car for a short distance until it turned a corner and came to a stop at the curb; they then parked their vehicle at an angle in front of the Falcon. Cole and Renzulli immediately got out of their vehicle, identified themselves and ordered the appellants out of the car. Kirby and Elmore got out voluntarily, but, as they were being informed of their rights and searched for weapons, Singleton, who had remained in the driver's seat, drove up onto the curb, around the inspectors' vehicle, and sped off. As he drove away, Singleton threw a jacket out of the passenger window of the car. Inspector O'Neill gave chase after Singleton, who was captured when he lost control of his car after a short high speed chase through the city streets.

As soon as Kirby and Elmore had been handcuffed, Inspector Renzulli picked up the jacket, which had landed on the sidewalk about six feet from where Elmore had been standing. Inspector Renzulli discovered an open envelope containing four checks rolled up in the jacket. He also discovered a wallet containing identification belonging to Elmore in the pocket of the jacket. At the scene of the arrest, both Elmore and Kirby denied ownership of the jacket. Later, after having been taken to the inspectors' office, Elmore admitted that the jacket belonged to him, but continued to deny any knowledge of the checks.

The four checks which Inspector Renzulli discovered in the jacket were payable to residents who lived on Mr. Atmore's mail route. Three of the checks were issued by the State of New York and the fourth one by the American Express Company. Counsel at the trial stipulated that the checks had been duly issued by the payors, that they had been placed in separate envelopes and properly placed in the mail, that they had never been received by the payees, and that the payees had never authorized any other person to receive the checks for them. The rest of the mail was never recovered.

The indictment upon which the appellants were tried charged them with unlawfully possessing and aiding and abetting the unlawful possession of the four checks which were the contents of letters stolen from the United States mail. Each of the appellants now claims that there was insufficient evidence to support a finding that he had possessed, either actually or constructively, or had aided and abetted one of the others in the possession of the checks.

■ The district court instructed the jury that it could find a defendant guilty by determining that he possessed the checks with the knowledge that they were stolen or that he aided and abetted one of the others in the unlawful possession of the checks.[3] Because we have concluded that

---

**2.** During the approximately twelve minutes that it took Atmore to deliver this section of his route, the jeep was out of his sight for only half of that time.

**3.** The appellants have challenged the district court's charge to the jury with respect to the knowledge of the checks' stolen nature which

one must have in order to be convicted of aiding and abetting another in the unlawful possession of stolen mail. We note that the district court's charge was proper in this respect even though it did not specifically inform the jury that the inference of guilty knowledge which may accompany possession of recently stolen mail cannot be extended to cover one

the evidence was sufficient to show that each of the defendants possessed the stolen checks, we need not test the sufficiency of the evidence with respect to the alternative vicarious liability for aiding and abetting.

■ There was ample evidence to prove both Singleton's and Elmore's actual possession of the checks. Singleton was the owner, driver, and only occupant of the car when the rolled up jacket came flying out of the car's window. See *Arellanes v. United States*, 302 F.2d 603, 607 (9 Cir. 1962). Such evidence was certainly sufficient for the jury to conclude that he actually possessed the checks when he threw them from the car. Similarly, the jury could properly have found that Elmore actually possessed the checks since they were discovered rolled up in his jacket. Elmore insists that the government introduced no evidence to negate the possibility that Singleton placed the checks in the jacket before throwing it out of the car. The prosecution, however, is under no duty to negate all possible innocent inferences from a set of circumstantial facts where, as here, the jury could easily have properly inferred guilty possession from those same facts. See e.g., *Holland v. United States*, 348 U.S. 121, 139–40, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Taylor*, 464 F.2d 240, 244 (2 Cir. 1972).

The proof of Kirby's possession of the checks is admittedly weaker than the showing of possession by his codefendants, but we nevertheless find that it is sufficient for the jury to have found guilt beyond a reasonable doubt. It will be recalled that Kirby was seated in the passenger seat of Singleton's car while it was in close proximity to the mail jeep at the time of the alleged theft,[4] and that he was arrested about an hour later, having voluntarily alighted from the car shortly before Singleton tossed the stolen checks out of the window. Kirby argues that at best the prosecution has proved only that he was present at both the theft of the mail and while one or both of the others committed the crime of possessing the stolen mail. Relying on such cases as *United States v. Infanti*, 474 F.2d 522 (2 Cir. 1973); *United States v. Steward*, 451 F.2d 1203 (2 Cir. 1971); and *United States v. Kearse*, 444 F.2d 62 (2 Cir. 1971), Kirby claims that his mere presence or close proximity to the stolen checks is insufficient to show that he had actual possession or the necessary "dominion and control" over them in order to be considered a constructive possessor.

While Kirby arguably may be correct in his attack upon the sufficiency of the evidence of possession presented in the government's direct case, we must view that evidence together with the evidence which Kirby presented through his own testimony.[5]

On his own behalf Kirby testified that he had not left his house until 12:50 p.m. on the day in question, which time was shortly after Atmore's discovery that the mail was missing. Kirby further testified that he had met Elmore on foot some distance from the location of the parked jeep, and that the two of them had not been in Singleton's car when that car had been spotted near the jeep. He flatly denied having anything to do with the theft of the mail or any knowledge that the stolen checks had been in the car when he was arrested.

■ Kirby's testimony, of course, was in direct contradiction to Atmore's identification of him as one of the individuals at the jeep. More important, however, was the

who aids and abets another in that possession. See *United States v. Jones*, 308 F.2d 26 (2 Cir. 1962) (*en banc*).

4. We think the evidence that the appellants actually burglarized Atmore's jeep is more than sufficient for the jury to have so concluded. See *infra*, n. 7.

5. "Once a defendant offers evidence after the denial of a motion for acquittal at the close of the Government's case in chief, of course, the defendant waives any claim as to the sufficiency of the Government's case considered alone." *United States v. Pui Kan Lam*, 483 F.2d 1202, 1208 n. 7 (2 Cir. 1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); *United States v. Arcuri*, 405 F.2d 691, 695 n. 7 (2 Cir. 1968), *cert. denied*, 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969).

contradiction of Elmore's concession that he had been present at the jeep with Singleton and Kirby. After Elmore's concession, Kirby's denials of presence at or participation in the theft of the mail from the jeep must have struck the jury as hollow, if not perjurious. Under these circumstances, the jury would be "entitled to take into account what appears to us an incredibility inherent in [his] story." *United States v. Pui Kan Lam, supra,* 483 F.2d at 1208; *United States v. Arcuri, supra,* 405 F.2d at 695; *Cf. Dyer v. MacDougall,* 201 F.2d 265, 269 (2 Cir. 1952) (L. Hand). Accordingly, the jury could properly have inferred that Kirby's presence with the checks at the time of arrest was less than innocent, *i.e.,* that his was more than the "bare presence" condemned as insufficient by both the Supreme Court and by numerous decisions of this Court. *Cf. United States v. Carneglia,* 468 F.2d 1084, 1087 (2 Cir. 1972), *cert. denied sub nom., Inzerillo v. United States,* 410 U.S. 945, 93 S.Ct. 1391, 35 L.Ed.2d 611 (1973); *United States v. Massarotti,* 462 F.2d 1328 (2 Cir. 1972), *cert. denied sub nom. Legari v. United States,* 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246. This is not a case where a defendant has told spontaneous falsehoods to law enforcement officials in an attempt to extricate himself from suspicious circumstances, *see United States v. Johnson,* 513 F.2d 819, 824 (2 Cir. 1975);

*United States v. Kearse, supra,* 444 F.2d at 64, but a case involving a falsehood told to the jury in an attempt to negate the defendant's connection with the theft of the very goods in whose presence he was arrested. Admittedly, Kirby was not charged with the actual theft of the checks, but the jury was entitled to infer from both his presence and his patently false denial of such presence that he had been involved in the theft. It would defy common sense, when the evidence points to the likelihood that a person was involved in the theft of goods, to draw any inference from that person's later presence in a car containing those same goods, other than that he exercised some dominion and control over them.[6] Such dominion and control together with actual presence is sufficient to show possession of the checks.[7]

## II. *Charge to the Jury on the Elements of the Offense.*

■ Having made no requests to charge or objections to the district court's charge,[8] the appellants for the first time on this appeal have asserted that the charge contained reversible error because it failed to instruct the jury that it must find that the checks had in fact been stolen as a separate and essential element of the offense under 18 U.S.C. §§ 1708 and 2.[9]

---

6. Because of our determination that a new trial must be held and because, in light of our opinion with respect to Kirby's damaging testimony, he may choose not to testify at the new trial, we express no opinion as to the sufficiency of the evidence against him absent that testimony, an issue that is not now before us.

7. The defendants cannot successfully challenge the sufficiency of the evidence with respect to the remaining elements of the crime. The fact that the checks were actually stolen may be inferred from the facts agreed to in the trial stipulation. The jury was certainly entitled to infer that the checks were among the pieces of mail which disappeared from the jeep. It was also entitled to infer that the mail that disappeared was stolen because the jeep had been forced open and the disappearance occurred within such a short period of time. *See e.g., United States v. Clark,* 525 F.2d 314, 315 (2 Cir. 1975); *United States v. Jacobs,* 475 F.2d 270 (2 Cir. 1973), *cert. denied sub nom. Thaler v. Unit-*

ed States, 414 U.S. 821, 94 S.Ct. 131, 38 L.Ed.2d 53.

Once it is established that the checks were among the pieces of mail that were stolen from the jeep, it would be ridiculous for anyone who was present at the theft to contend that he did not know that the fruits of that theft were stolen.

8. Appellant Singleton did attempt to question the use of the stipulation after the court had made its charge. His objection, however, was not to the charge but to the Assistant United States Attorney's mentioning and use of the stipulation during his summation.

9. It was not until the oral argument of this appeal, in response to questioning from Judge Oakes, that counsel for Singleton claimed that an essential element of the offense had been removed from the jury's consideration. The parties were permitted to and did submit additional briefs on this issue.

After having read to the jury both the indictment [10] and the pertinent portion of the statute,[11] the district court outlined the elements of the offense as follows:

"The elements of the offense as set forth in Section 1708 of Title 18 of the United States Code and charged in the indictment are (1) unlawful possession of a letter or the contents of a letter, which in this case were one American Express Traverler's [sic] check and three State of New York checks, which had been stolen or abstracted from a Post Office or a depository of mail matter, and (2), knowledge by the possessor that the letter or the contents of the letter, which in this case were one American Express Traveler's check and three State of New York checks, were so stolen or abstracted. Each of these elements of the offense charged in the indictment will have to be proved to your satisfaction beyond a reasonable doubt as to the defendants before they can be convicted.

"The burden is upon the Government to prove, beyond a reasonable doubt, these two elements of the offense and failure to do so is fatal to the prosecution and entitles the defendants to a verdict of acquittal." [12]

From this outline of the instructions to the jury, it is clear that there was no separate and specific charge that the jury must find that the checks were stolen. It is equally obvious that unless the checks had been stolen there could have been no offense committed.

Generally, this Court has held that the failure to charge accurately each and every element of the offense may be plain error cognizable on appeal without an objection or request for charge having been made below. *United States v. Natale*, 526 F.2d 1160 (2 Cir. 1975); *United States v. Howard*, 506 F.2d 1131 (2 Cir. 1974); *United States v. Fields*, 466 F.2d 119 (2 Cir. 1972). Those cases, however, do not establish a *per se* rule that every charge which fails separately and specifically to state each element will irreparably confuse the jury and deny the defendant his "substantial rights" to a fair trial and to have the jury pass upon each issue. In *Howard, supra*, 506 F.2d 1131, for example, the charge failed to explain any of the legal principles in a bank robbery offense. Similarly, in *Fields, supra*, 466 F.2d at 121, this Court found that the "cumulative effect" of numerous erroneous instructions in the jury charge constituted plain error within the meaning of Rule 52(b), Fed.R.Crim.P. The situation was much the same in *United States v. Clark*, 475 F.2d 240, 250 (2 Cir. 1973), where "the trial judge's charge, viewed as a whole,

---

10. "THE GRAND JURY CHARGES:

On or about the 17th day of June 1974, within the Eastern District of New York, the defendant GARY SINGLETON, the defendant WILLIAM M. KIRBY and the defendant WILLIAM ELMORE did unlawfully have in their possession the following:

1. American Express Travelers Check No FB68–475–370 payable to Lawrence Reed.
2. State of New York check No. 42554393 payable to Samuels E L&E H 130 46-145th Street South Ozone Park, N.Y. 11436.
3. State of New York check No. 98630020 payable to G. M. Conner 133 11-145th Street S. Ozone Pk., N.Y. 11436.
4. State of New York check No. 42578747 payable to Lewis—S & E 126 22—145th Street South Ozone Park, N.Y. 11436.

which were the contents of letters stolen from the United States Mail, the defendants knowing the same to have been stolen. (Title 18, United States Code, Section 1708 and Section 2.)

A TRUE BILL.
/s/ .........................
FOREMAN"

11. The district court read the pertinent portion of 18 U.S.C. § 1708 to the jury as follows:

"Whoever buys, receives, or conceals or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been stolen, taken, embezzled, or abstracted, as herein described, from a Post Office or mail receptacle knowing the same to have been stolen, taken, embezzled or abstracted shall be punished."

12. The trial judge then went on exhaustively and properly to detail the legal principles involved in both actual and constructive possession and the requisite knowledge concerning the stolen nature of the mail.

[was] so deficient and defective in material respects as to amount to 'plain error' . . . ."

In the instant case, we do not see how the jury could have been led to believe that an offense could have been committed without the checks having been stolen. Implicit in a finding that the defendants possessed the checks with knowledge that they were stolen is the fact that they were indeed actually stolen. *See United States v. Clark*, 525 F.2d 314, 315 (2 Cir. 1975). We therefore decline to find plain error here simply because the district court failed to charge separately and specifically that the checks must be stolen for the offense to have been committed.

■ The more difficult and more fundamental question in the present case, however, is whether or not the judge's charge, as a whole, clearly led the jury to the conclusion that it did not have to consider that issue since the prosecution had already successfully proved that the checks were stolen. Such a "directed verdict" on any issue in a criminal case is, of course, an unjustifiable encroachment upon the jury's sole duty, *i.e.*, to decide all issues of fact. *United States v. Hines*, 256 F.2d 561, 564 (2 Cir. 1958). "The plea of not guilty places every issue in doubt, and not even undisputed fact may be removed from the jury's consideration, either by direction or by omission in the charge." *United States v. Natale, supra*, 526 F.2d at 1167. Unhappily, we are convinced that, notwithstanding the ample evidence from which the jury could have concluded that the checks were stolen, such a removal of that issue from the jury's consideration occurred in this case.

■ At the trial, the parties stipulated that the checks had been sent through the mails by their issuers but had never been received by their payees (who were also presumably their addressees). The appellants claim that the prosecutor misused, and the district court incorrectly interpreted the

stipulation as a concession that the checks had been stolen, and that the court improperly charged the jury while under the influence of that misimpression. *See United States v. Pravato*, 505 F.2d 703 (2 Cir. 1974).[13] There was no such misuse or misinterpretation in this case. The prosecutor merely commented upon the essence of the stipulation to the jury and then asked it to conclude from the facts contained in the agreement that the checks had been stolen. The court similarly, in a sidebar colloquy with Singleton's counsel, made quite clear that it understood the stipulation's limited scope by saying: "It says these checks were made by the payor, were deposited in the mail and were not received. That's all."

Notwithstanding the court's proper interpretation of the stipulation, in discussing the issue of knowledge in its charge, it did comment that "[f]rom the circumstances of this case, it would seem clear that the property that [sic], these checks, were recently stolen." This comment, unfortunately in combination with the lack of a separate and distinct charge that the jury must find that the checks were stolen, more than probably indicated to the jury that the stolen status of the checks was an established fact. On numerous occasions during the charge, the judge referred to "stolen checks." We cannot fault him for such references. To instruct the jury properly with respect to the third element of the offense, knowledge that the checks were stolen, one must, of necessity, make mention of "stolen checks." However, we fear that to do so constantly, without an explicit warning to the jury at the outset that it must first find the checks to be stolen, presents too strong an invitation for the jury to neglect the issue entirely.

This case is quite different from the situation in *United States v. Natale, supra*, 526 F.2d at 1166. There the district court commented fairly that it did not think that the evidence on two issues was in dispute after

---

**13.** It should be noted that in *Pravato* the district court's inadvertent misinterpretation and improper comment to the jury about a stipulation did not result in a reversal of the convic-

tion. In *Pravato* there had been no objection, for strategic reasons, to the misrepresentation of the stipulation.

it had specifically included those two issues as elements of the offense. Here, the court commented that it was "clear" that the checks were recently stolen. Short of directly informing the jury that the fact had been established beyond a reasonable doubt, the court could have done little more to direct the jury to come to that conclusion. We are aware that this comment was in all probability only an unfortunate, inadvertent slip of the tongue. But in conjunction with the repeated references to "stolen checks" and the failure to instruct the jury that it was its duty to determine whether or not the checks were actually stolen, that inadvertence was fatal.

The Government has made a valiant effort to save the convictions on this appeal by arguing, in an attempt to render any error "harmless," that the defendants, in their summations, conceded that the checks had been stolen. In our search of the transcripts for such concessions, however, we find only references to "stolen checks" quite similar in nature to the same references made by the court in its charge, i.e., in connection with discussions of the concepts of possession, knowledge, and aiding and abetting. Furthermore, Elmore's counsel referred, in his summation, to the "alleged" burglary before trying to explain his client's presence outside the car. Similarly, in commenting upon the lack of evidence of the theft, Singleton's counsel mentioned that "there was no evidence . . . as to how the theft, if it occurred, how [sic] it occurred." Admittedly, the evidence that the checks were stolen, indeed that they were stolen by at least one of these defendants, is strong. It is also true, perhaps for that reason, that the defendants chose to attack the Government's case in other areas, focusing attention most heavily upon the issues of identification, possession and knowledge. Nevertheless, the fact that the checks were stolen was not conceded.

Given the circumstances of this case we must reluctantly conclude that the district court's charge, in its entirety, had the effect of removing an essential element of the offense from the jury's consideration. Where there exists such a clear probability that the jury was dissuaded from considering an essential element of the offense charged, we must reverse the convictions and remand for a new trial, notwithstanding the lack of objection below.[14]

14. The remaining issues raised by the appellants on this appeal all involved the conduct of the trial and the sentences imposed. We feel no need at this point to discuss situations which are unlikely to occur on retrial.