STATE of Maine

v.

Richard SMITH.

Supreme Judicial Court of Maine.

Nov. 13, 1978.

Thomas E. Delahanty, II, Dist. Atty., R. Barrie Michelsen, Asst. Dist. Atty. (orally), Patrick F. Donnellan, Legal Intern, Auburn, for plaintiff.

Craig E. Turner (orally), South Paris, for defendant.

Before McKUSICK, C. J., and ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

■ It is clear, a violation of 17–A M.R.S.A. § 255(1)(C) (unlawful sexual contact) has been established only when it is proven beyond a reasonable doubt that the sexual contact was *"for the purpose of arousing or gratifying sexual desire"* 17–A M.R.S.A. § 251(1)(D). To instruct that an intentional sexual contact with an *"immoral or evil intent"* is sufficient is not to describe the law accurately.

The real question before us becomes: is appellant entitled to a new trial because the presiding Justice instructed the jury in part that the crime was complete, the other elements being present, if the sexual contact was made *"with an immoral or evil intent"* in the circumstances presented in this case?

The issue is before us because the appellant was convicted at a jury trial of two counts of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(C). He has appealed from the judgment entered on the verdict.

■ Although we recognize that the instruction given the jury that

*if you believe that a sexual contact was in fact made, that it was an intentional one, deliberately made by this defendant with an immoral or evil intent, . . . it is the burden of the State to establish with evidence beyond a reasonable doubt*

was error, we conclude it was not error requiring setting aside the judgment and ordering a new trial.

We deny the appeal.

The appellant raises two points on appeal.

As one point he urges that the prosecutrix was incompetent to testify and it was error to permit her to do so.

The second point is that reversible error is claimed in the instruction to the jury to which we alluded above.

■ As to the first claim, suffice it to say, that the question of the competency of a child to testify is largely addressed to the discretion of the presiding Justice. The decision of the Court that the child was competent to testify cannot properly be labeled an *"arbitrary decision."* From the record in this case we find no abuse of judicial discretion.

The first point is without merit, *cf. State v. Brewer,* Me., 325 A.2d 26 (1974); *State v. Hodgkins,* Me., 238 A.2d 41 (1968); *State v. Ranger,* 149 Me. 52, 98 A.2d 652 (1953).

■ The claim of error in the presiding Justice's instruction to the jury was clearly saved. Counsel called the Court's attention to the Court's error and registered objection thereto at a time when the Court could have easily corrected the error. This it refused to do.

At this point our thoughts must turn to a consideration of Rule 52(a), M.R.Crim.P. Does the fact that there was error on the part of the presiding Justice, clearly saved by timely objection, require reversal of the judgment which resulted from the trial, without consideration of other factors?

We conclude it does not.

As we see it, such is the clear mandate of Rule 52(a) M.R.Crim.P.

Our Rule 52 was borrowed directly from Federal Rule 52, the historical background of which becomes pertinent to a clear understanding of the rationale behind our decision in this case.

Time was when appellate courts, in criminal cases especially, were considered by many to be *"impregnable citadels of technicality."*

Associate Justice Rutledge has well described the purpose of Section 269 of the former Federal Judicial Code, (the predecessor to Rule 52(a)) in these terms:

> *The salutary policy embodied in § 269 was adopted by the Congress in 1919, Act of February 26, 1919, c. 48, 40 Stat. 1181, after long agitation under distinguished professional sponsorship, and after thorough consideration of various proposals designed to enact the policy in successive Congresses from the Sixtieth to the Sixty-fifth. It is not necessary to review in detail the history of the abuses which led to the agitation or of the progress of the legislation through the various sessions to final enactment without debate. 56 Cong.Rec. 11586; 57 Cong.Rec. 3605. But anyone familiar with it knows that § 269 and similar state legislation grew out of widespread and deep conviction over the general course of appellate review in American criminal causes. This was shortly, as one trial judge put it after § 269 had become law, that courts of review, "tower above the trials of criminal cases as impregnable citadels of technicality." So great was the threat of reversal, in many jurisdictions, that criminal trial became a game for sowing reversible error in the record, only to have repeated the same matching of wits when a new trial had been thus obtained.*
>
> *In the broad attack on this system great legal names were mobilized, among them Taft, Wigmore, Pound and Hadley, to mention only four. The general object was simple, to substitute judgment for automatic application of rules; to pre-serve review as a check upon arbitrary action and essential unfairness in trials, but at the same time to make the process perform that function without giving men fairly convicted the multiplicity of loopholes which any highly rigid and minutely detailed scheme of errors especially in relation to procedure, will engender and reflect in a printed record. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). (Citations omitted).*

In reviewing the history which prompted the promulgation of Rule 52, these rule of thumb conclusions appear:

(a) If the initial action of the trial court is correct, Rule 52 has no application.

(b) If the initial action was incorrect, the rule recognizes three classes of errors although only two are mentioned by name in the Rule.

(c) An error that has not prejudiced the defendant is deemed harmless and therefore not reversible even though timely objection was made.

   (1) If the error *may have been* prejudicial and objection was made, it is *"reversible error."*

(d) Finally, Rule 52(b) contemplates a class of *"plain error"*; error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.

The harmless error rule has not been without its critics. Foremost among these critics was the late Judge Jerome Frank of the Second Circuit Court of Appeals. His dissenting opinion in *United States v. Antonelli Fireworks Co.*, 2d Cir., 155 F.2d 631 (1946), *cert. denied* 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946), is quite generally regarded as the clearest and most forceful attack ever mounted on the *"harmless error"* rule.

▊ Nevertheless, this Court has long since embraced this *"harmless error"* rule by its adoption of Rule 52(a) M.R.Crim.P., and in a substantial body of case law. As this Court pointed out in *State v. Heald,*

Me., 307 A.2d 188, 194 (1973), it is not every trial error which should result in a reversal. A reversal is compelled only if the error affects *"substantial rights." See also, State v. McKeough,* Me., 300 A.2d 755 (1973), and cases there cited.

■ We must then view the error made by the trial Justice in his instructions to the jury as to an essential element of the crime, in the light of the *"harmless error rule."*

The burden here was clearly upon the State to produce evidence convincing in its effect beyond a reasonable doubt that the sexual contact was *"for the purpose of arousing or gratifying sexual desire."*[1] The description given by the child victim as to the details of the incidents alleged to have been the unlawful sexual contact could not possibly permit any conclusion by a fact-finder but that such unlawful sexual contact was had for the purpose of arousing and gratifying the appellant's *"sexual desire."*

The appellant chose to testify.

His contention was that no such incidents as those described by the prosecutrix ever occurred. Under the circumstances the issue of the purpose of the sexual contact, if any there was, was never contested by the defendant in his testimony. This is necessarily so because the appellant denied there was any sexual contact *for any purpose.* The contest occupied wholly different ground. Morever, our examination of the entirety of the evidence in this case convinces us that no rational fact-finder could conclude that there was any *"evil or immoral"* purpose *other than* to satisfy sexual desire. It is for that reason we determine the error to be *"harmless"* beyond a reason-

able doubt. We consider *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), therefore, applicable and controlling. It governs as to constitutional error even if it is such as involves a failure to charge correctly on an essential element of a crime. *Cf. State v. McKeough, supra.*[2]

We are aware of *United States v. Howard,* 506 F.2d 1131 (2d Cir. 1974). In that case, unlike the case now before us, there was a failure by the presiding Justice to give *any* instruction concerning an essential constituent element of the crime. The jury was operating entirely in the dark as what offense the defendant was alleged to have committed. As *Howard* itself acknowledges, however, this must be distinguished from the situation in which a jury does know *"precisely what the elements of the crimes charged are . . . and deliberating upon that knowledge, . . . .."* (emphasis supplied). 506 F.2d 1131 at 1134.

Here, there was an instruction concerning all the essential elements of the crime even though as to one element the instruction was erroneous. We are not in disagreement with *United States v. Natale,* 526 F.2d 1160 (2d Cir. 1975), cert. den. 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976), where it is said *"failure* to charge each separate element of an offense *may* be plain error."* (emphasis supplied). Nor are we in disagreement with the statement in *United States v. Singleton,* 532 F.2d 199 (2d Cir. 1976) where it is written

> *Generally, this Court has held that the failure to charge accurately each and every element of the offense may be plain error cognizable on appeal without an objection or request for charge having been made below.* United States v. Na-

---

1. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) makes clear the due process clause of the Federal Constitution requires the government to *establish beyond a reasonable doubt* every fact necessary to constitute the crime with which defendant is charged. Our State Constitution (Me.Const. art. I. § 6) is of identical meaning and is of equivalent import. *State v. Demerritt,* 149 Me. *380, 386, 103 A.2d 106, 109 (1953).*

   In view of our conclusion that the evidence established that the purpose of the touching, if

any there was, was to arouse or gratify sexual desire, no further discussion of *Winship, supra* is indicated. No attack on the sufficiency of the evidence has been mounted. Our only concern is whether the erroneous instruction constitutes *"reversible error."*

2. In thus applying the harmless error rule of *Chapman v. California, supra* to this case, we cannot be fairly charged with becoming fact-finders or depriving defendant of trial by jury unless *Chapman v. California, supra,* is wrongly decided.

*tale,* 526 F.2d 1160 (2 Cir. 1975); *United States v. Howard,* 506 F.2d 1131 (2 Cir. 1974); *United States v. Fields,* 466 F.2d 119 (2 Cir. 1972). *Those cases, however, do not establish a per se rule that every charge which fails separately and specifically to state each element will irreparably confuse the jury and deny the defendant his "substantial rights" to a fair trial and to have the jury pass upon each issue.*

We consider the case before us on its facts more similar to the factual context of *Verdugo v. United States,* 402 F.2d 599 (9 Cir. 1968), where there was an instruction as to the meaning of the word *"possession"* used in the applicable statute. The Court declared the instruction was absolutely erroneous, yet found the error was harmless.

While we can seldom say, with moral certainty, that an error is not prejudicial, we are required, in the language of Justice Rutledge

> *to substitute judgment for automatic application of rules; to preserve review as a check upon arbitrary action and essential unfairness in trials, but at the same time to make the process perform that function without giving men fairly convicted the multiplicity of loopholes which any highly rigid and minutely detailed scheme of errors, especially in relation to procedure, will engender and reflect in a printed record.*

We now do that.

Our judgment is that the error in this case was harmless.[3] In the factual context with which we are here concerned, a correct instruction, in our judgment, could not possibly have brought about a not guilty verdict.

The entry must be:

Appeal denied.

Judgment of conviction affirmed.

WERNICK and DELAHANTY, JJ., did not sit.

---

**3.** The writer of this opinion views the facts in this case clearly distinguishable from those facts which prompted him to write a dissenting opinion in *State v. Lewisohn,* Me., 379 A.2d 1192, 1213 (1977).

GODFREY and NICHOLS, Justices, dissenting.

We cannot join in the judgment of the Court.

We agree with the majority that the presiding justice did nor err in permitting the child prosecutrix to testify. We agree with them also that (a) the justice erred in failing to instruct the jury as to an element of the offense of which the defendant was accused, and (b) this error was duly saved when the defendant objected to the jury charge, clearly stating his ground for objection in time for the presiding justice to correct his error.

We cannot agree that this was harmless error.

The defendant was charged with unlawful sexual contact pursuant to the provisions of 17-A M.R.S.A. § 255(1)(C). The Maine Criminal Code defines "sexual contact" as requiring the purpose of "arousing or gratifying sexual desire." 17-A M.R.S.A. § 251(1)(D). That definition thereby becomes an essential element of the offense with which the defendant was charged. That purpose was one of the facts the State had the burden of proving beyond a reasonable doubt.

The due process clause of the fourteenth amendment of the United States Constitution protects a defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The Declaration of Rights of the Maine Constitution, in protecting a defendant against deprivation of his liberty but by "the law of the land," is of identical meaning and is of equivalent import. Me.Const. art. I, § 6; *State v. Demerritt,* 149 Me. 380, 386, 103 A.2d 106, 109 (1953).

The jury was instructed that a guilty verdict required a finding that the defendant's touching of the child was "with an

immoral or evil intent." Even after objection, the jury was not instructed that a guilty verdict required a finding that this touching was for the purpose of "arousing or gratifying sexual desire." Thus the justice chose to omit from his charge one of the essential elements of the crime. The majority opinion does not rely on any argument that the instruction was close enough to what was necessary under the statute and the Constitution to make the variance harmless. The charge could not be saved on any such basis, of course. The difference between the instruction as given and the statutory definition was substantial.

This infraction was one of constitutional magnitude.

This refusal, after objection, to accord the defendant his right to an instruction on every fact which the Legislature had made an element of this crime cannot be disregarded as harmless error. Rather, substantial rights of the defendant were affected.

Notwithstanding the defendant's plea of not guilty and his subsequent objection to the charge as given, the majority suggest that the purpose of the sexual contact "was never contested" at trial. They declare that the variance between the charge as given and the express requirement of our criminal code was a harmless one. Acting virtually as a fact finder, the Court finds beyond a reasonable doubt that a correct instruction could not possibly have produced a different verdict.

Our answer is two-fold. First, where a defendant has not admitted a single element of crime with which he is charged, the *Winship* doctrine entitles him to insist upon an accurate jury instruction on every element of that crime, whether or not he has adduced evidence thereon. Second, a disposition of his case, over his objection, in a manner which withdraws from jury determination an essential element, which he has not admitted, effectively denies the defendant the right to trial by jury guaranteed him by the federal and state constitutions. *U.S.Const., amend.* VI; *Me.Const. art.* I, § 6. *See Casella v. United States,* 449 F.2d 277, 283 (3d Cir. 1971).

Therefore, we respectfully dissent.

We submit that the judgment of the court below should be vacated and the case remanded for a new trial.